**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 01-50656
consolidated with
No. 01-50666

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MITCHELL STRAIL TOLBERT,

Defendant - Appellant.

Appeals from the United States District Court
For the Western District of Texas

September 12, 2002

Before KING, Chief Judge, and PARKER and CLEMENT, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

We must determine whether offenses that are similar in nature but arise from discrete circumstances and were committed two years apart can be grouped when sentencing occurs in a consolidated proceeding. The district court answered in the negative. We reverse and remand.

## BACKGROUND

From December 1997 until August 1998, Defendant-Appellant Mitchell S. Tolbert and his employer, Full Service Staffing

("FSS"), generated fictitious accounts receivable which were used as collateral to secure loans from a private lender. FSS was located in Texas, and the lender, in North Carolina. FSS never repaid the loans, and the resulting loss to the lender was $1,274,888. Then, during a five-day period in December 1999 to January 2000, Tolbert engaged in a check kiting scheme, whereby he deposited worthless checks drawn on his brokerage account into his business account at Bank One. The bank credited his account while the checks were being cleared. Tolbert then withdrew the proceeds. The resulting loss to the bank was $32,524.

On January 4, 2001, Tolbert was indicted on 33 counts related to the factoring scheme. On April 16, 2001, he pled guilty to 12 of them--wire fraud, 18 U.S.C. § 1343 (five counts); conspiracy to commit wire fraud, 8 U.S.C. § 371; and interstate transportation of fraudulently taken property, 18 U.S.C. § 2314 (six counts). On June 6, 2001, Tolbert was indicted for a single count of bank fraud, 18 U.S.C. § 1344. He pled guilty to it a few days later. With the government's concurrence, Tolbert moved for joint sentencing on all counts. The district court granted the motion.

At sentencing, Tolbert moved to have his convictions grouped under the sentencing guidelines. The district court refused. Noting that grouping would effectively result in Tolbert's receiving no additional punishment for the bank fraud offense, the district court said: "[N]o way in time nor logic could the

guidelines mean for a person who commits wire fraud in 1997 and 1998 [and] simply is not prosecuted or sentenced for it . . . receive[] no sentence for committing bank fraud in 2001." The court then determined the offense levels separately, calculating 19 levels for the wire fraud counts and 10 levels for the bank fraud count. Tolbert was sentenced to terms of 36 and 12 months' imprisonment, sentences to run consecutively.

Tolbert made a timely appeal.

## DISCUSSION

We review the district court's decision in accordance with the version of guidelines in effect at the time of sentencing-- i.e., the 2000 version. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.11 (2000)("U.S.S.G."). The decision whether to group offenses is a question of law we review de novo. *See United States v. Patterson*, 962 F.2d 409, 416 (5th Cir. 1992).

Chapter Three, Part D, is applied after the sentencing court determines the applicable guideline for each offense and makes necessary adjustments. *See* U.S.S.G. § 1B1.1. In cases where the defendant has been convicted on more than one count, it directs the sentencing court to combine convictions into Groups of Closely Related Counts. *Id.* § 3D1.1(a)(1). Multiple counts should be grouped if they involve "substantially the same harm." *Id.* § 3D1.2. Counts involve substantially the same harm when the victims are the same and the counts were part of the same

-3-

transaction or scheme, *id.* § 3D1.2(a)&(b), or when one count is a specific offense characteristic of another, *id.* § 3D1.2(c). Additionally, multiple counts involve the same harm "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm . . . ." *Id.* § 3D1.2(d). Once individual convictions are grouped, the sentencing court determines the applicable offense level for each group. *Id.* § 3D1.3. For offenses grouped under § 3D1.2(d), the offense level "is the offense level corresponding to the aggregated quantity," as calculated elsewhere in the guidelines. *Id.* § 3D1.3(b). If there is only one group, its offense level is used to determine the defendant's sentence. *Id.* § 3D1.4 cmt. application n.3.

The purpose of grouping is to guard against disproportionate punishment when a defendant is charged with multiple counts arising from a single transaction or scheme. "A defendant who assaults others during a fight, for example, may warrant more punishment if he injures ten people than if he injures one, but his conduct does not necessarily warrant ten times the punishment." U.S.S.G. § 1A4(e). By grouping, "[t]he guidelines . . . minimize the possibility that an arbitrary casting of a single transaction into several counts will produce a longer sentence." *Id.* At the same time, Chapter Three, Part D, does not limit its application to counts arising from the same set of

predicate facts.  Under § 3D1.2(d), counts can be grouped if each offense shares a particular attribute under the guidelines-- namely, that the offense level is determined largely on the basis of some unit of measure, like the value of the property stolen or the weight of the drugs smuggled.  *See id.* § 3D1.2 cmt. application n.6.  There is no requirement that the offenses relate to each other in time or space, thus apparently making the pedagogical concern noted above inapplicable.

The guidelines do not articulate a rationale for grouping under § 3D1.2(d).  Although it is close, we nevertheless conclude that § 3D1.2(d) allows for grouping of factually unrelated counts.  Lest it be rendered superfluous, subsection (d) must be distinguishable from § 3D1.2's other subsections.[1]  Subsections (a) and (b) require grouping where the counts had the same victim and were part of the same act or transaction or were part of a common scheme or plan.  The first clause of subsection (d), the measurable harm clause, also must be distinguished from the clause that follows it.  The second clause requires grouping "if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."  Subsection (d)'s two clauses are joined by "or," not "and," meaning that

_____

[1]  Subsection (c) is not relevant for purposes of our analysis, but we note that counts grouped under it must be related in time. *See id.* § 3D1.2 cmt. application n.5.

-5-

they are exclusive of each other.[2]  Thus, to keep subsection (d)

from being totally subsumed by (a) and (b) and the second part of

(d) it must address offenses in which 1) the victims are

different and 2) the involved behavior is unconnected.  In other

words, subsection (d) covers, among other things, discrete,

unrelated offenses involving measurable harm.[3]

We find support for our construction in Chapter Five.  That

chapter is applied following the application of Chapter Three,

Part D.  *See* U.S.S.G. § 1B1.1.  Guideline 5G1.2 is entitled

"Sentencing on Multiple Counts of Conviction."  It in effect says

that the total punishment is to be determined in accordance with

the grouping principles from Chapter Three, Part D.  Its

commentary states that § 5G1.2 "applies to multiple counts of

conviction (1) contained in the same indictment or information,

or (2) contained in different indictments or information for

which sentences are to be imposed at the same time or in a

consolidated proceeding."  Thus, by extension, grouping is

required for offenses charged in different indictments but for

---

  [2]  Offenses that would fall under the second clause but not the
first include, for example, trafficking and dealing in child
pornography, *id.* §§ 2G2.2 & 2G2.4.  *See id.* App. C. amend. 615.

  [3]  This construction is borne out by an example in the
application notes: "(3) The defendant is convicted of five counts
of mail fraud and ten counts of wire fraud.  Although the counts
arise from various schemes, each involves a monetary objective.
All fifteen counts should be grouped together."  *Id.* § 3D1.2 cmt.
application n.6.

-6-

which the defendant is being sentenced in a single proceeding. In the main, offenses arising from the same set of predicate facts are charged in a single indictment. By requiring grouping for counts contained in different indictments, the guidelines facilitate the grouping of offenses that will not necessarily arise from a discrete set of circumstances.

Based on the foregoing construction of §3D1.2, we conclude that the district court erred in not grouping the counts from the factoring scheme with the bank fraud count. All of these offenses are sentenced in accordance with § 2F1.1.[4] *See* U.S.S.G. § 2F1.1 cmt. statutory notes. Subsection (b)(1) of the same guideline determines the offense level on the basis of loss in dollars. Moreover, subsection (d), discussed above, expressly states that offenses applying guideline 2F1.1 should be grouped. *See id.* § 3D1.2 ("Offenses covered by the following guidelines are to be grouped under this subsection: . . . . §§ 2F1.1, 2F1.2."). The base offense level under § 2F1.1 is 6. When grouping measurable harm offenses, guideline 3D1.3(b) states that "the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two . . . ." The total loss is

---

[4] Guideline 2F1.1 has since been deleted. *See id.* App. C amend. 617. Because the offenses in this case are sentenced under the same guideline, we need not interpret the phrase "same general type," which is mentioned in § 3D1.2, application note 6.

$1,303,393 ($1,274,888 + $32,524), which equates to an 11 level adjustment. *See* § 2F1.1(b)(1)(L)(loss more than $800,000 but less than $1,500,000). Finally, 2 levels are added because the factoring scheme involved "more than minimal planning." *See id.* § 2F1.1(b)(2). Thus, the total offense level for the group is 19. Tolbert's criminal history category is II, resulting in a sentencing range of 33 to 41 months' imprisonment. This is the range Tolbert would have received had he only been sentenced on the counts from the factoring scheme, since the addition of the loss from the bank fraud is too small to move him into the next category under § 2F1.1(b)(1). Grouping therefore saves Tolbert a year's imprisonment.

We recognize that this result gives Tolbert a windfall through the mere fortuity of having been sentenced in a single proceeding. But the guidelines expect that such anomalies will occasionally occur. *See* U.S.S.G. § 1A4(e). Indeed, for such instances it reminds the sentencing court of its authority to order an upward departure.[5] *Id.* Further, we believe that situations like Tolbert's are the exception. In most instances, unrelated offenses brought in separate proceedings will not be sentenced together. We also note that the district court retains its discretion to decide whether or not to consolidate offenses

---

[5] We express no opinion whether departure is warranted in this case, leaving that determination to the sound judgment of the district judge.

for joint sentencing.  Of course if our analysis is incorrect, the sentencing commission can always clarify Chapter Three, Part D, in next year's addition of the guidelines.

## CONCLUSION

The judgment of the district is REVERSED and the case is REMANDED for resentencing.[6]

---

[6]  Having determined that a single group is appropriate, we need not reach Tolbert's argument under § 3D1.4.