**UNITED STATES of America**

v.

**Daniel ROCHA–DOZAL.**

**No. EP–06–CR–00310 KC.**

United States District Court,
W.D. Texas,
El Paso Division.

June 16, 2006.

Jose Montes, Jr., El Paso, TX, for Daniel Rocha–Dozal.

Richard Douglas Watts, U.S. Attorneys, El Paso, TX, for United States of America.

## *ORDER*

CARDONE, District Judge.

On this day, the Court considered Defendant Daniel Rocha–Dozal's ("Defendant") sentencing in the above-captioned cause. For the reasons set forth below, this Court finds that the appropriate sentencing guideline in this case is United States Sentencing Guideline section 5G1.3(c) ("U.S.S.G. § 5G1.3(c)").

## I. BACKGROUND

On October 10, 2005, United States Border Patrol Agents ("USBP Agents") observed a group of subjects walking north of the United States–Mexico border in an area known for alien smuggling in Fabens, Texas. EP–05–CR–2349–FM Presentence Investigation Report ¶ 4 ("05 PSR"). USBP Agents observed these subjects entering a 1996 Ford Taurus owned by Defendant's sister. *Id.* at ¶¶ 5, 6. After watching the vehicle travel along a local road, the USBP Agents conducted an immigration stop on the vehicle and questioned its occupants. *Id.*

The vehicle contained four female passengers who admitted to being Mexican citizens and nationals without documents to properly enter or remain within the United States. *Id.* at ¶ 5. USBP Agents questioned the driver, Defendant, who admitted that he knew the passengers were illegal aliens. *Id.* at ¶ 6. Defendant told the USBP Agents that while he was at a store purchasing cigarettes in Caseta, Chihuahua, an unknown male approached him and offered him money to transport the undocumented aliens to a Good Time store in Fabens. *Id.* at ¶¶ 6, 9. The unknown male told Defendant that the aliens would be waiting for him on the United States side of the Rio Grande River. *Id.* at ¶ 9. Thereafter, Defendant was to return to Caseta and collect the fee. *Id.*

In connection with this offense, on December 6, 2005, Defendant pled guilty to one charge of Transporting Aliens for Profit in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) & (B)(i). *Id.* ¶¶ 1–2. Defendant was released on bond pending his sentencing, which was to occur on February 22, 2006. *Id.* ¶ 3. However, before sentencing could occur, USBP Agents again arrested Defendant in Fabens on February 2, 2006. *Id.*

On February 2, 2006, USBP Agents conducted a traffic stop of a 1992 Chevrolet Lumina parked on the shoulder of Interstate–10 near Fabens. EP–06–CR–310–KC Presentence Investigation Report ¶ 4 ("06 PSR"). The vehicle contained five occupants consisting of two citizens and nationals of Honduras, two citizens and nationals of Mexico, and Defendant. *Id.* at ¶ 5. The Mexican nationals indicated that they had made arrangements with an unknown individual in Mexico to be smuggled into the United States. *Id.* at ¶ 6. They were instructed to hide in an area north of the Rio Grande River, and that the only person that would be in the area would be the individual responsible for transporting them into the United States. *Id.* One of the nationals indicated that Defendant approached the area where they were hiding and opened the doors to the vehicle. *Id.*

Defendant initially claimed that the four individuals approached him, seeking a ride from Fabens to El Paso, and also that he had no idea that they were illegal aliens. *Id.* at ¶ 7. Later, he recanted these statements and claimed that his friend, Javier Hernandez ("Hernandez"), asked him to pick up four individuals near a convenience store in Fabens. *Id.* Defendant indicated that he believed the four individuals were undocumented immigrants and he intended to transport them to another convenience store in El Paso and later meet Hernandez to discuss his fee. *Id.*

On February 22, 2006, Defendant received the sentence for his December 6, 2005 plea. 05 PSR. Defendant's total offense level was 12. *Id.* at ¶ 22. This consisted of a base level of 12, in accord with U.S.S.G. § 2L1.1(a)(2), with no further adjustments. *Id.* at ¶¶ 14–22. Defendant was also placed in criminal history category IV, resulting in a guideline imprisonment range of 21 to 27 months. *Id.* at ¶ 50. The sentencing court imposed a 27 month imprisonment term. EP–05–

CR–2349–FM Judgment in a Criminal Case.

During Defendant's sentencing, the sentencing court was made aware of Defendant's intervening arrest. Second Addendum to Presentence Report Ex. 1 ("Second Addendum to PSR Ex. 1"). However, the sentencing judge declined to consider the intervening arrest in sentencing Defendant for the December 6, 2005 plea, choosing instead to reserve that matter for the second sentencing. Second Addendum to PSR Ex. 1 3:19, 6:4–11. The sentencing court did, however, make an initial guess as to what might occur during that sentencing. Second Addendum to PSR Ex. 1 3:19, 6:4–11.

Thereafter, on February 28, 2006, Defendant pled guilty to one count of Transporting Aliens for Private Financial Gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) & (B)(i). 06 PSR ¶ 2. Sentencing was scheduled to take place on May 25, 2006. 06 PSR. Shortly before sentencing, Defendant's attorney filed objections to the 06 PSR, arguing that Defendant's sentence is governed by U.S.S.G. § 5G1.3(b) because Defendant's two offenses are part of the same relevant conduct under U.S.S.G. § 1B1.3(a)(2), and that therefore this Court is required to impose a concurrent sentence. The Government contends that Defendant's sentence is governed by U.S.S.G. § 5G1.3(c), and that therefore this Court may, but is not required to, impose a concurrent sentence.

## II. DISCUSSION

█ A district court generally has broad discretion in choosing to sentence a defendant to a consecutive or concurrent sentence. *United States v. Johnson,* 40 F.3d 1079, 1082 (10th Cir.1994) (citing 18 U.S.C. §§ 3553(a), 3584(a), & 3584(b)). This discretion, however, is limited by § 5G1.3 of the United States Sentencing Guidelines when the court seeks to impose a sentence upon a defendant who is subject to an undischarged term of imprisonment. *Id.* Specifically, § 5G1.3 provides:

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

(c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S. SENTENCING GUIDELINES MANUAL § 5G1.3 (2005).

 Section 5G1.3(b) was intended to credit, for guideline purposes, defendants who have already served time for the same conduct or course of conduct. *Johnson*, 40 F.3d at 1082. It requires a district court to impose a concurrent sentence when 1) the defendant is subject to an undischarged term of imprisonment, and 2) the conduct underlying the undischarged term of imprisonment has been "fully taken into account in the determination of the offense level for the instant offense." *Id.* Commentary to § 5G1.3 indicates that subsection (b) specifically, addresses cases wherein the conduct resulting in the undischarged term of imprisonment has been fully taken into account under § 1B1.3 (Relevant Conduct) in determining the offense level for the instant offense. *Id.*

Section 1B1.3 of the Guidelines defines relevant conduct as:

(1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a).

Unlike section 5G1.3(b), section 5G1.3(c) is a "catch-all" provision that provides a Court with discretion as to whether a sentence should be imposed concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment. U.S. SENTENCING GUIDELINES MANUAL § 5G1.3 note 3.

Defendant argues that the appropriate Guideline in the instant case is § 5G1.3(b) because Defendant's October 2005 and February 2006 offenses are part of the same "relevant conduct" under § 1B1.3(a)(2), since the offenses are of a character for which § 3D1.2 would require grouping and the offenses clearly meet the three-part test for "same course of conduct." The Government contends that the appropriate Guideline is § 5G1.3(c), as grouping is not required under § 3D1.2 and the offenses may not properly be considered the "same course of conduct."

## A. AUTOMATIC GROUPING UNDER SECTION 3D1.2

Defendant argues that a straightforward application of § 3D1.2 mandates that this Court group Defendant's offenses together. Section 3D1.2 provides:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S. SENTENCING GUIDELINES MANUAL § 3D1.2 (2005).

It further provides that "[o]ffenses covered by the following guidelines are to be grouped under this subsection ... § 2L1.1 [Smuggling, Transporting, or Harboring an Unlawful Alien]." *Id.*

 The seemingly mandatory "to be grouped" language upon which Defendant bases his argument is deceptively simple. *United States v. Lenoci*, 377 F.3d 246, 252 (2d Cir.2004). Case law from several circuits indicates that, contrary to a simple reading of § 3D1.2, grouping of offenses listed under the "to be grouped" language is not, and should not be, automatic. *Id.; United States v. Defterios*, 343 F.3d 1020, 1023 (9th Cir.2003); *United States v. Tolbert*, 306 F.3d 244, 246–47 (5th Cir.2002). For example, in attempting to construe the meaning of the "to be grouped" language, the Second Circuit found that the language is open to at least three possible interpretations:

1) group all counts that fall under guidelines which appear anywhere in the "to be grouped" list,

2) group all counts that fall under guidelines that appear on the same line of the list, or

3) group all counts that fall under a particular guideline in the list.

*Id.*

Most courts have rejected the first interpretation. *Id.* at 253. These courts have found that: 1) the fact that offense guidelines appear on the list of counts to be grouped is an overly simple rationale for grouping; 2) grouping should not necessarily be automatic based on the fact that a count falls under the guideline because it eliminates any examination of whether offenses are of the same general type and otherwise suitable for grouping, and 3) such an interpretation is inconsistent with Application Note 6, which indicates that "offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping." *Id.* at 252–53. While two circuits have adopted the second interpretation, there is little authority supporting it. *Id.* at 253. Finally, the Second Circuit concluded that the third interpretation is logical and consistent with Application Note 6, meaning that offenses covered by the same guideline, as in the instant case, would have to be grouped. *Id.* at 254. However, the Second Circuit specifically noted that this view is not universally accepted. *Id.*

The Second Circuit noted at least some precedent suggesting that even when counts fall under identical "to be grouped" guidelines, grouping is not necessarily automatic. *Id.* Moreover, important to this case is the fact that the Second Circuit in *Lenoci* did not involve an intervening arrest, as is the case here, but rather a district court's failure to group two counts of simultaneous conviction. *Id.* at 247.

■ Similarly, other circuits have noted that grouping under § 3D1.2 is not automatic. *Defterios*, 343 F.3d at 1023; *Tolbert*, 306 F.3d at 246–47. The Ninth Circuit, in discussing the fact that § 3D1.2 provides for grouping of "all counts involving substantially the same harm," held that "[t]his provision is not a direction to merge indictments for two separate crimes that were distinct in time, place, and victims." *Defterios*, 343 F.3d at 1023. Moreover, the Fifth Circuit has noted that the basic "purpose of grouping is to guard against disproportionate punishment when a defendant is charged with multiple counts arising from a single transaction or scheme." *Tolbert*, 306 F.3d at 246. Grouping is intended to minimize the ability of the Government to arbitrarily cast a single transaction into several counts, thereby producing a longer sentence. *Id.* at 247.

■ In light of the foregoing, this Court rejects Defendant's argument that Defendant's offenses from the first and second indictment should be grouped for purposes of sentencing simply because both offenses are for Smuggling, Transporting, or Harboring an Unlawful Alien under U.S.S.G. § 2L1.1. Rather, in order to remain consistent with the Fifth Circuit's finding in *Tolbert* that grouping is intended to prevent casting a single transaction or scheme into multiple counts, this Court finds it prudent to conduct an investigation into whether the two offenses constitute a "single transaction or scheme" before determining whether or not to group the offenses.

■ Based on the record before it, this Court cannot make such a finding. The facts indicate that, with respect to the October offense, Defendant used his sister's car, transported four Mexican nationals, alleged that an unknown male asked him to transport the Mexican nationals and then return to Mexico to collect payment, and admitted his knowledge that the Mexican nationals were not authorized to be in the United States. By contrast, with respect to the February offense, Defendant transported two Mexican nationals and two Honduran nationals, initially claimed that the four individuals approached him seeking a ride and that he did not know their immigration status but later recanted these statements and claimed that his friend asked him to transport the aliens, and further claimed that he was to discuss his fee with his friend after completing the task. More importantly, between the first and second offense, there was an intervening arrest, indicating that these were two separate and distinct crimes.

The only similarities between the two offenses are: 1) the number of aliens transported, 2) the Defendant, and 3) the type of offense. There is no indication that the person who arranged the transportation was the same, that the plan to transport the aliens was the same, or that the method of payment was the same. In addition, Defendant flatly admitted his knowledge of wrongdoing in the October offense, while initially denying any knowledge of wrongdoing in the February offense. Accordingly, there is insufficient evidence to support the conclusion that both offenses involve the same transaction or scheme, and therefore grouping under § 3D1.2 is inappropriate.

## B. SAME COURSE OF CONDUCT OR COMMON SCHEME

Even if this Court were to conclude that Defendant's offenses were appropriate for grouping under § 3D1.2, this Court would still need to find that Defendant's acts and omissions "were part of the same course of conduct or common scheme or plan as the offense of conviction," in order to conclude that Defendant's offenses constitute "rele-

vant conduct." U.S. SENTENCING GUIDE-LINES MANUAL § 1B1.3(a)(2) (2005). Application Note 9 defines a "common scheme or plan" and "same course of conduct" as the following:

9. "Common scheme or plan" and "same course of conduct" are two closely-related concepts.

(A) Common scheme or plan. For two or more offenses to constitute part of a *common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.* For example, the conduct of five defendants who together defrauded a group of investors by computer manipulations that unlawfully transferred funds over an eighteen-month period would qualify as a common scheme or plan on the basis of any of the above listed factors; i.e., the commonality of victims (the same investors were defrauded on an ongoing basis), commonality of offenders (the conduct constituted an ongoing conspiracy), commonality of purpose (to defraud the group of investors), or similarity of modus operandi (the same or similar computer manipulations were used to execute the scheme).

(B) Same course of conduct. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are *sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.* Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the *degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval be-tween the offenses.* When one of the above factors is absent, a stronger presence of at least one of the other factors is required. For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity. The nature of the offenses may also be a relevant consideration (e.g., a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals).

U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 note 9 (2005) (emphasis added); *United States v. Anderson,* 174 F.3d 515, 526 (5th Cir.1999).

■ Although there is substantial overlap between these two terms, "course of conduct" encompasses a greater sphere of activity than "common scheme or plan." *United States v. Wilson,* 106 F.3d 1140, 1143 (3d Cir.1997). In essence, Application Note 9 instructs courts to apply a three-prong test to determine whether offenses are part of the same course of conduct. *Id.* Courts must look to the: 1) degree of similarity of the offenses, 2) the regularity of the offenses, and 3) the time interval between the offenses. *Id.; United States v. Cedano–Rojas,* 999 F.2d 1175, 1180–81 (7th Cir.1993). "Even if one factor is absent, 'a stronger presence of at least one of the other' factors may be sufficient to find the same course of conduct." *Wilson,* 106 F.3d at 1143.

■ In the this case, as stated above, there is little evidence that the two offenses are similar. Again, the only similarities between the two offenses are: 1) the number of aliens transported, 2) the Defendant, and 3) the offense charged. Otherwise, there is no evidence that the

instrumentalities, people, or plan of activities were similar. Second, there is no indication that this is a regularly-occurring operation. Defendant has only been convicted twice for the charge at issue. Finally, these offenses were separated not only by four months, but also by an intervening arrest. This Court finds that the intervening arrest was sufficient to have severed the chain of events, such that these offenses cannot constitute an "ongoing series of offenses." The mere fact that Defendant chose to commit the exact same offense while released on bond does not make these two offenses a single episode, spree, or series of offenses. To hold otherwise would essentially allow defendants carte blanche to commit the same offenses while released on bond without fear of incurring a lengthy sentence. This Court is unwilling to set such precedent. Therefore, this Court finds the evidence insufficient to conclude that Defendant's activities constituted a single episode, spree, or ongoing series of offenses such that it could constitute the "same course of conduct."

 Having concluded that Defendant's offenses are not relevant conduct as defined in § 1B1.3, this Court finds that applying § 5G1.3(b) would be inappropriate. *See also, e.g., United States v. Smith*, 242 F.3d 392, 2000 U.S.App. LEXIS 33657 (10th Cir. filed Dec. 22, 2000) (holding that there was no duplicative punishment in sentencing defendant consecutively under § 5G1.3 for crimes committed while on bond pending a trial for state charges) (unpublished decision); *United States v. Rankin*, 94 F.3d 645, 1996 U.S.App. LEXIS 22428 (6th Cir. filed Aug. 14, 1996) (affirming judge's decision to impose consecutive sentences under § 5G1.3(c) for offenses committed while on bond) (unpublished opinion); *United States v. Brewer*, 43 F.3d 1472, 1994 U.S.App. LEXIS 35426 (6th Cir. filed Dec. 14, 1994) (applying § 5G1.3(c) when defendant committed two

new offenses before receiving his sentence on a prior charge) (unpublished opinion); *United States v. Johnson*, 991 F.2d 797, 1993 U.S.App. LEXIS 8426 (6th Cir. filed Apr. 9, 1993) (affirming judge's decision to reject a plea agreement and sentence defendant consecutively under § 5G1.3(c) for offenses committed while on bond) (unpublished opinion). Rather, the correct Guideline to apply in this case is § 5G1.3(c). Thus, this Court has discretion to run the sentence for the instant offense concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment.

## C. DEFENDANT'S SENTENCE IN THE INSTANT CASE

Although the Guidelines are not mandatory, courts must continue to consult them for purposes of sentencing. Accordingly, this Court will first, as it does in all criminal cases, determine a Guidelines range. In so doing, it will take into account any factual disputes or the stated objections as previously discussed and ruled upon. Using this range and these factors, the Court will then determine an appropriate and reasonable sentence that is "sufficient, but not greater than necessary to satisfy the purposes of punishment." 18 U.S.C. § 3553(a)(1).

As part of this process, the Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a), including: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the kinds of sentences available and the Guidelines and policy statements issued by the Sentencing Commission, including the advisory Guideline range; 3) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and 4) the need to provide restitution where applicable.

In the instant case, the 06 PSR assigned Defendant a base offense level of 12 pursuant to U.S.S.G. § 2L1.1(a)(2). The 06 PSR then added a two-level increase pursuant to U.S.S.G. § 2L1.1(b)(3)(A) because Defendant, as discussed above, committed the instant offense after sustaining a conviction for a felony immigration and naturalization offense. The PSR credited Defendant with a two-level reduction for acceptance of responsibility. This set the Defendant's adjusted offense level at 12 with a criminal history category of V, which yields a Guidelines range of 27 to 33 months.

Having determined a Guidelines range, this Court will now turn to the factors set forth in 18 U.S.C. § 3553(a).

### 1. THE NATURE OF THE OFFENSE AND THE HISTORY AND CHARACTER OF DEFENDANT

■ Defendant pled guilty to a federal felony. More specifically, he pled guilty to one count of Transporting Aliens for Private Financial Gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) & (B)(I). His base offense level was increased by two because, as previously stated, he committed that offense after sustaining a conviction for a felony immigration offense. The Defendant's role in the offense consisted of gathering the four undocumented immigrants and transporting them to a convenience store in El Paso for profit.

Daniel Rocha–Dozal is a thirty-seven (37) year old male who was born in Phoenix, Arizona. He resided there with his family until 1970 when they relocated to El Paso, Texas. In 1988, Rocha–Dozal and his family relocated to Fabens, Texas, where they have since remained. Rocha–Dozal has eleven years of formal education. He has a history of drug and alcohol abuse, has attended weekly Alcoholics Anonymous classes, and on December 12, 2005, he submitted a positive urine specimen for cocaine while on bond in Docket No. EP–05–CR–2349–FM. Rocha–Dozal has several criminal drug and alcohol related convictions. Most notably, the instant offense was committed by Defendant while on bond and awaiting sentencing for committing the very same crime.

### 2. SENTENCES AVAILABLE, INCLUDING THE ADVISORY GUIDELINE RANGE

As more fully set forth above, this Court has considered all sentences available, including the advisory Guideline range.

### 3. NEED TO AVOID SENTENCING DISPARITIES

Again, as more fully set forth above, this Court finds that the interests of justice favor a consecutive sentence. To find otherwise would result in some defendants receiving a shorter sentence than others, merely because they happen to commit a crime while out on bond. The Court finds this result unacceptable and inconsistent with the ends of justice.

### 4. THE NEED FOR RESTITUTION

Within this prong, the Court considers the needs of the public and any victims of the crime. In arriving at Defendant's sentence, the Court has considered these factors, including the need to promote respect for the law. As outlined above, it would appear that Defendant has little respect for the law and his first conviction was insufficient to deter him from committing further crimes.

### III. CONCLUSION

Having determined Defendant's advisory Guidelines range, the Court will now impose a sentence. In considering the circumstances of this Defendant, the na-

ture and circumstances of this case, and the totality of the circumstances, the Court believes that a fair and reasonable sentence is within the advisory Guidelines range and that it complies with the sentencing objectives found in 18 U.S.C. § 3553(a).

**IT IS THEREFORE ORDERED** that Defendant shall receive a sentence of 30 months of incarceration to run consecutively to the sentence imposed in EP–05–CR–2349–FM. There will be three (3) years of supervised release on a reporting basis and Defendant is to comply with all of the standard terms and conditions of supervised release, including the following:

Defendant shall not commit another Federal, state, or local crime;

Defendant shall be prohibited from possessing a firearm or other dangerous weapon;

Defendant shall refrain from any unlawful use of a controlled substance and submit to drug testing as required by the Probation Department;

Defendant shall perform 200 hours of community service work without pay;

Defendant shall participate in a program approved by the U.S. Probation Office for treatment of narcotic addiction or drug or alcohol dependency; and

Defendant shall abstain from using alcohol and other intoxicants throughout the term of supervision.

There will be no fine in the case. The Court will order the $100.00 special assessment. The Court will **DISMISS** Count II of the indictment.

The Deputy Clerk is **ORDERED** to prepare the Judgment and Commitment in this case pursuant to this Order.

**SO ORDERED.**