# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 21, 2023

Lyle W. Cayce
Clerk

No. 22-50457

United States of America,

*Plaintiff—Appellee*,

*versus*

Ivan Mendoza,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:21-CR-1492

Before Higginbotham, Smith, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Ivan Mendoza pled guilty to assaulting a federal officer, transporting aliens for profit, and aiding and abetting to transport aliens for profit. Mendoza was sentenced to 12 months' imprisonment for the assault charge (the statutory maximum for the assault offense charged) and 27 months' imprisonment for each of the two transporting offenses, all of which were to be served concurrently. Mendoza challenges multiple sentencing

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50457

adjustments as well as the district court's decision not to group all of the charges together.  We AFFIRM.

## I.

## A.

Shortly after midnight on August 11, 2021, Mendoza was driving a Jeep with a female passenger in the front seat when he was stopped at an immigration checkpoint in El Paso, Texas. Mendoza answered immigration officers' questions, including those posed to his companion. A United States Border Patrol agent asked the passenger to exit the vehicle and, upon her doing so, proceeded to ask her questions regarding her citizenship. Mendoza remained inside the parked car. Eventually, the passenger admitted to immigration officers that she was a Guatemalan citizen and lacked authorization to enter the United States. After instructing the passenger to enter the building, the agents approached the driver's side of the Jeep. When agents attempted to open the driver's side doors, Mendoza started his engine and began driving away.[1] Ignoring commands to stop moving, Mendoza fled, "dragging [an] agent for a few feet [and] causing him to fall to the ground." Border Patrol agents followed Mendoza onto the highway "with their emergency equipment on. The chase continued for a few miles until [the] agents lost visual of the vehicle's brake lights," prompting them to "turn[] off their emergency equipment, terminate[] pursuit, and return[] to the checkpoint."

---

[1] The PSR notes that Mendoza first put the car in reverse and backed up in the direction of Border Patrol agents, though Mendoza challenged that. Video from the incident confirms Mendoza's recitation. Ultimately, this factual dispute is immaterial to the challenges at issue.

2

Later that day, agents found Mendoza's Jeep at a residence in El Paso and observed Mendoza driving the vehicle. When an agent attempted to arrest Mendoza, "Mendoza began swinging his arms free while yelling at the agents. After a brief struggle, agents handcuffed Mendoza and he was read and informed of his rights."

Following his arrest, Mendoza admitted that he had been paid to transport his travel companion through the checkpoint. Mendoza also admitted that he had "fled in the Jeep Cherokee, striking a [Border Patrol] agent."

Mendoza was charged with three separate offenses: (1) assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1); (2) aiding and abetting the transportation of aliens for profit in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(II), (a)(1)(A)(ii), (a)(1)(B)(i); and (3) transporting an alien for profit in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(i).[2] Mendoza pled guilty without a plea agreement.

**B.**

The Probation Office's Pre-Sentence Investigation Report ("PSR") bifurcated the three counts into two groups: the assault offense group and the transporting offenses group. For the assault, the PSR calculated a base offense level of 10, added a three-level specific offense characteristic adjustment because the offense involved physical contact, and added two more levels as an obstruction of justice adjustment because Mendoza had recklessly created a substantial risk of death or serious bodily injury to another while fleeing from a law-enforcement officer.[3] This resulted in an

---

[2] Mendoza was initially charged with two counts of transporting an alien for profit, but ultimately pled guilty to one count of each offense.

[3] U.S.S.G. §§ 2A2.4, 3C1.2.

adjusted offense level of 15 for the assault offense group. The transporting offense group incurred a base level of 12,[4] with a two-level specific offense characteristic adjustment for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person,[5] but U.S.S.G. § 2L1.1(b)(6) dictates that the level must be raised to a floor of 18. Therefore, the PSR assessed an adjusted offense level of 18 for the transporting convictions.

Pursuant to U.S.S.G. § 3D1.4, each group was assigned one unit, and because the greater of the two units was a level 18, that level was adopted. Two levels were added for the number of units assigned,[6] leaving a combined adjusted offense level of 20. Three levels were then taken off for Mendoza's acceptance of responsibility and for his assistance to authorities in the investigation and prosecution.[7] Therefore, Mendoza's total offense level was 17. Given a total offense level of 17 and a criminal history category of II, the PSR assessed a Guidelines range of 27 to 33 months' imprisonment.

Mendoza objected to the report for two reasons. First, Mendoza argued that the agent "created the risk on his own accord" by approaching the car and that the agent's "irrational actions" should not be attributed to him in the form of specific-offense-characteristic adjustments. Second, Mendoza claimed that he was entitled to a mitigating role adjustment. The probation officer declined to amend the report.

At sentencing, Mendoza renewed his objections. The Government disputed Mendoza's first objection, arguing that Mendoza "had control of

---

[4] U.S.S.G. § 2L1.1(a)(3).

[5] U.S.S.G. § 2L1.1(b)(6).

[6] U.S.S.G. § 3D1.4.

[7] U.S.S.G. § 3E1.1.

the situation," that "[i]t was his intent to flee," and that "all the Border Patrol agent did who was dragged by the vehicle is open the door and attempt to move towards the interior of the vehicle" without having any "warning of what was going to happen." The Government also argued that Mendoza is "role neutral," namely that he should not be entitled to a minor role adjustment.

The district court overruled Mendoza's objections with respect to the creation of substantial risk, though it granted the minor role adjustment. Accordingly, Mendoza's final total offense level was 15. Mendoza's Guidelines range was 21 to 27 months' imprisonment, and he was sentenced to 27 months.

Mendoza now appeals two sentencing adjustments as well as the district court's decision not to group the transporting counts with the assault count. While Mendoza raised objections below regarding the adjustments, he concedes that his objections below are distinct, namely "based on fact issues[,] and [he] therefore did not preserve the errors raised in this appeal," which bring questions of law.

## II.

"This Court reviews the district court's 'interpretation or application of the Sentencing Guidelines de novo and its factual findings for clear error.'"[8] "The questions of whether and how to group a defendant's offenses are legal questions, as they involve 'a purely legal interpretation of Guidelines terminology and the application of that terminology to a particular

---

[8] *United States v. Sincleair*, 16 F.4th 471, 474 (5th Cir. 2021) (quoting *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007)).

No. 22-50457

set of facts.'"[9] It follows, then, that "[t]he decision whether to group offenses is a question of law we review de novo."[10] "The standard of appellate review of a reckless endangerment finding is clear error, and the district court's finding will be upheld if the finding is plausible in light of the record as a whole."[11] However, if an objection was not sufficiently raised in the district court, we review for plain error.[12]

To establish plain error, a criminal defendant must demonstrate: (1) "an error that has not been intentionally relinquished or abandoned"; (2) that is "plain—that is to say, clear or obvious"; and (3) that "affected the defendant's substantial rights."[13] Upon making this threefold showing, an appellate court "should exercise its discretion to correct the forfeited error if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'"[14] In other words, "granting relief under plain error review is discretionary rather than mandatory."[15] Satisfying these requirements "is difficult."[16]

---

[9] *United States v. Patterson*, 962 F.2d 409, 416 (5th Cir. 1992) (quoting *United States v. Ballard*, 919 F.2d 255, 257 (5th Cir. 1990), *cert. denied*, 499 U.S. 954 (1991)).

[10] *United States v. Tolbert*, 306 F.3d 244, 246 (5th Cir. 2002); *see also United States v. Garcia-Figueroa*, 753 F.3d 179, 190 (5th Cir. 2014) ("We review the district court's grouping *de novo*."); *Patterson*, 962 F.2d at 416.

[11] *United States v. Kelley*, 40 F.4th 276, 285 (5th Cir. 2022).

[12] *See United States v. Hernandez*, 690 F.3d 613, 620 (5th Cir. 2012); *see also United States v. Garcia-Gonzalez*, 714 F.3d 306, 317 (5th Cir. 2013).

[13] *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016).

[14] *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[15] *United States v. Seale*, 600 F.3d 473, 488 (5th Cir. 2010).

[16] *Puckett v. United States*, 556 U.S. 129, 135 (2009).

No. 22-50457

## III.

As stated previously, Mendoza raises three separate challenges: (1) the application of a six-level upward adjustment to the transporting convictions for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person; (2) the application of a two-level upward obstruction of justice adjustment to the assault conviction for reckless endangerment during flight from a law-enforcement officer; and (3) the refusal to group the assault and the transporting convictions pursuant to U.S.S.G. § 3D1.2(c) and, in doing so, applying a two-level upward multicount adjustment pursuant to U.S.S.G. § 3D1.4. For clarity, we address these issues in a different order—grouping offenses first, followed by scrutiny of the respective adjustments—and ultimately conclude that the district court may have erred in one respect, but it was in any event harmless.

## A.

We start with whether Mendoza's offenses should have been grouped. Section 3D1.2 of the Guidelines provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> > (a) When counts involve the same victim and the same act or transaction.
> >
> > (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
> >
> > (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other

adjustment to, the guideline applicable to another of the counts.[17]

Broadly speaking, this Section "prevents 'double counting' of offense behavior" where "the offenses are closely related."[18]

Returning to the language of the Guidelines, specifically, § 3D1.2(c), whether the counts should have been grouped depends on whether the assault count "embodies" the conduct underpinning the "substantial risk of death or serious bodily injury" adjustment, under § 2L1.1(b)(6), to the transporting offenses. The Government argues that this requirement is not met because the § 2L1.1(b)(6) adjustment to the transporting offenses is justified by Mendoza's conduct subsequent to his physical assault upon the Border Patrol agent, that is, his hurried departure from the inspection station followed by the high-speed highway chase. Mendoza rebuts that that cannot be the case because "there is no evidence in the record that [he] engaged in a high-speed chase on the highway." We disagree.

The PSR states that "[Border Patrol] agents followed Mendoza on Highway 62/180 with their emergency equipment on" after he "drove off at a high rate of speed," describing the pursuit as a "chase." Moreover, the PSR states that despite "chas[ing]" Mendoza, the officers "lost visual of the vehicle[]." Though these particular facts—adopted by the district court in full without objection from Mendoza—do not paint the *most* vivid picture possible, we know enough: a car "chase" required law enforcement's use of emergency lights at night on a major highway, resulting in successful evasion of law enforcement. This picture gives rise to the pursuit alone as a plausible basis for the § 2L1.1(b)(6) adjustment to the transportation offenses that is

---

[17] U.S.S.G. § 3D1.2(a)–(c).

[18] *Id.* § 3D1.2 cmt. n.5.

independent of the assault conduct: Mendoza posed a threat to drivers and others on or near the highway.

Mendoza's contention that the Government makes this argument "for the first time on appeal" is also incorrect. True, when discussing this adjustment at sentencing, the Government primarily focused on the argument that *Mendoza* made at that time, *i.e.*, that the Border Patrol agent created the risk, rebutting this objection by noting that Mendoza "ha[d] control of that vehicle at that point" and was "the one that makes the decision as to what to do, whether to comply or not, whether to end the situation peacefully or flee the checkpoint." But the Government also made the secondary argument regarding the chase on which it now rests: "The PSR indicates also a high speed flight to the extent that the Border Patrol agents activated the emergency lights." At sentencing, the district court rejected Mendoza's objections, saying: "Based on the objections, the [c]ourt will overrule [them]. The [c]ourt will find it is correctly scored with risk of serious bodily injury and physical contact, and I will overrule the objections." In sum, the district court's "substantial risk of death" adjustment is plausibly supported by the chase itself. It follows that, as the assault offense conduct does not "embod[y]" the highway chase, the district court did not impermissibly "double count[]" the misconduct.[19] Thus, the district court did not plainly err in deciding against grouping the transporting and assault offenses together.

## B.

We turn now to whether the district court erred in applying an adjustment to the transporting offenses based on the high-speed chase for recklessly creating a substantial risk of death or serious bodily injury to

---

[19] *Id.* § 3D1.2; *id.* cmt. n.5.

another. Section 2L1.1 of the Sentencing Guidelines provides a two-level upward adjustment for an offense involving the transport of an alien "if the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person."[20] Further, the Guidelines dictate that if the resulting offense level is less than 18, it is increased to level 18.[21] Further, the commentary explains that:

> Reckless conduct to which the adjustment from subsection (b)(6) applies includes a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle; carrying substantially more passengers than the rated capacity of a motor vehicle or vessel; harboring persons in a crowded, dangerous, or inhumane condition; or guiding persons through, or abandoning persons in, a dangerous or remote geographic area without adequate food, water, clothing, or protection from the elements).[22]

In short, "[t]his is a fact-specific inquiry that must uncover 'a *substantial* risk of *death* or *serious* bodily injury.'"[23]

Mendoza in essence argues that he fled *after* he was pulled over and the passenger had been removed from the Jeep, meaning that Mendoza "was no longer engaged in the criminal offense to which the [G]uideline [] applied." Because the scope of the offense conduct extends only to "the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that

---

[20] *Id.* § 2L1.1(b)(6).

[21] *See id.*

[22] *Id.* § 2L1.1 cmt. n.3.

[23] *United States v. Ramirez*, 37 F.4th 233, 236 (5th Cir. 2022) (citation omitted) (citing *United States v. Mata*, 624 F.3d 170, 174 (5th Cir. 2010) (per curiam); and then quoting *United States v. Zuniga-Amezquita*, 468 F.3d 886, 889 (5th Cir. 2006)).

offense," Mendoza contends, the adjustment is inapplicable. Further, Mendoza asserts that this adjustment is only appropriate when "applied to situations where the smuggling itself creates the risk" and that there exists no analogous precedent for applying this adjustment to similar conduct. Instead, he argues the risk at issue was better addressed by a different adjustment—one that did not include a level 18 floor.

The heart of Mendoza's argument misses the mark. First, the Guidelines Section that Mendoza cites regarding the scope of conduct expressly provides that "all acts and omissions committed . . . *in the course of attempting to avoid detection or responsibility for that offense*" are subject to offense-specific adjustments.[24] That Mendoza fled to avoid liability for the transporting offense is not in dispute, meaning the flight and its attendant harms to the pursuing agents and members of the public fall within the scope of the offense-specific conduct adjustments.

Second, as the Government correctly notes, the "commentary expressly contemplates the application of the adjustment in similar circumstances." Per the Guidelines Commentary for § 2L1.1, the Reckless Endangerment During Flight adjustment in § 3C1.2 should not *also* be applied for purposes of double-counting when the "basis" for the conduct giving rise to the § 2L1.1 adjustment is "fleeing from a law enforcement officer."[25]

Though Mendoza may be correct as to where the adjustment at issue is *typically* applied, no binding precedent *forecloses* the adjustment in these circumstances. The district court did not err.

---

[24] U.S.S.G. § 1B1.3(a)(1) (emphasis added).

[25] *Id.* § 2L1.1 cmt. n.3.

## C.

Finally, we ask whether the district court erred by applying a two-level obstruction of justice adjustment pursuant to U.S.S.G. § 3C1.2 to the assault offense for creating a substantial risk of death or serious bodily injury during flight. As the Government concedes, this is "a close question," but it is one that we need not and here do not answer today: Mendoza concedes that this error alone "would be harmless," as "it would not affect the final offense level." We agree. Mendoza's offense level for the transporting offenses was 16, while his offense level for the assault, inclusive of this adjustment, was 15. Therefore, even if the district court had not applied the two-level adjustment, his hypothetical offense level of 13 for the assault would still be within 4 offense levels of the transporting offenses, meaning the units would still be assigned one point each, and Mendoza's combined adjusted offense level would remain at 18.[26] In other words, there would not be a change in his Guidelines range, and any error—to the extent this was erroneous, a question on which we do not engage—must be deemed harmless.[27]

*****

We AFFIRM.

---

[26] *Id.* § 3D1.4(a).

[27] *See United States v. King*, 979 F.3d 1075, 1081 (5th Cir. 2020) ("[W]here a sentencing court makes an error in calculating the Guidelines range that does *not* have an effect on the ultimate Guidelines range that is applied, the error will be harmless unless the defendant can show that the error somehow affected the ultimate sentence that was imposed."); *United States v. Nimerfroh*, 716 F. App'x 311, 316 (5th Cir. 2018) (unpublished) (per curiam) ("[A]ny error by the district court was harmless because [the defendant] would have received the same guidelines range . . . even without the [erroneously applied] enhancement.").